**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TAQUILA COLEMAN, JOVONNI HOOPER, JOMARI HOOPER, ZOVANTES STAPLES, and J.B. by his mother, | |
| Plaintiffs, | Case No. 24-cv-8341 |
| v. | Hon. Steven C. Seeger |
| OFFICER ORLANDO LEON #823, OFFICER SCOTT MEDER #833, OFFICER S. JAMES #824, OFFICER L. BARNES #1250, INSPECTOR ALEX TIRADO, and the CITY OF COUNTRY CLUB HILLS, a Municipal Corporation, et al., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Taquila Coleman leased a home in the City of County Club Hills, and lived there with her child and a few other people. One day, police officers and a building inspector showed up out of the blue, and the visit quickly turned sour. The officers told Coleman that she was trespassing, and then forced everyone to leave.

The officers proceeded to search the house with the building inspector. When they finished, they nailed the doors shut and boarded up the windows, leaving Coleman and her family stranded.

Coleman and the others responded by filing suit against two police officers and the City itself. They brought two Fourth Amendment claims against the officers, and an indemnification claim against the City.

After the statute of limitations expired, Plaintiffs amended the complaint and raised a new claim against the City, alleging a violation of due process. Plaintiffs also added the building inspector (Alex Tirado) as a new defendant, and raised a due process claim against him, too.

Tirado and the City moved to dismiss the due process claim as time-barred under Rule 12(b)(6). They also make several other arguments in favor of dismissal.

For the reasons discussed below, Defendants' motion to dismiss is granted.

**Background**

At the motion to dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

Taquila Coleman leased a home at 18031 Anthony Ave. in Country Club Hills, Illinois. *See* Am. Cplt., at ¶ 2 (Dckt. No. 22). She lived there with a few other people, including her son (J.B.), Jovonni Hooper, Jomari Hooper, and Zovantes Staples. *Id.*

The complaint doesn't explain the relationships between those five people, but for present purposes, it makes no difference. The key point is that they lived there together "pursuant to a written lease," and all of them are plaintiffs. *Id.*

In late 2022 to early 2023, Coleman's minor son J.B. was apparently causing "some trouble" around town with his friends. *Id.* at ¶ 6. He caused enough trouble, it seems, to attract the attention and arouse the suspicion of the police.

In early January 2023, the officers were investigating some "alleged stolen vehicles" that were found on Coleman's property. *Id.* at ¶ 8.

On January 13, 2023, two police officers, Orlando Leon and Scott Meder, went to the home with Alex Tirado, the building inspector. *Id.* at ¶ 9. The complaint doesn't include many details about what transpired. The description leaves a lot of unanswered questions. But the punchline is that the visit went poorly.

The officers told Coleman and the others that "they did not have the authority to be on the property and were trespassing."[1] *Id.* at ¶ 12. That declaration was news to Coleman. After all, she had a lease to the home. *Id.* at ¶ 2.

The officers didn't have any basis to be there. There was no eviction order, and there wasn't a warrant authorizing a search or a seizure. Defendants were not committing any crimes and threatening public safety, either. *Id.* at ¶¶ 10, 16.

The officers nonetheless "seized" Coleman and her family and "placed [them] out of their home." *Id.* at ¶ 11. At that point, the officers "entered the Plaintiff's property and searched the residence." *Id.* at ¶ 23. On their way out, they "nailed the doors shut and boarded up the entrance," locking Plaintiffs out of their home. *Id.* at ¶ 24.

Plaintiffs allege that this incident was a ploy to run them out of town. In their view, the City, through its employees, "conspired to deprive the Plaintiffs of their property right" in an

---

[1] It is unclear to the Court how the investigation into stolen vehicles turned into a trespassing issue. The complaint is muddy on this point.

effort to "extract J.B. and his friend" and "extricate the Plaintiffs from Country Club Hills." *Id.* at ¶¶ 7, 17.

On September 12, 2024, Coleman and the others responded by suing the two officers and the City. *See generally* Cplt. (Dckt. No. 1). The complaint included three claims, including two Fourth Amendment claims against the officers, plus an indemnification claim against the City.

On March 26, 2025, Plaintiffs amended the complaint. The amended complaint shed a little more light on what, exactly, happened on January 13. But plenty of gaps in the story remain.

Apparently, a building inspector (Alex Tirado) "entered and inspected" the house with the officers. *Id.* at ¶ 29. At some point during the inspection, Tirado "determined that the Property was not suited for occupancy and issued a 'Not Approved for Occupancy' notice.'" *Id.* at ¶ 30.

The amended complaint added several new defendants. For the first time, Plaintiffs raised a claim against Tirado, alleging a violation of due process. Plaintiffs also added two other police officers (Officer James and Officer Barnes) as defendants.

The amended complaint also added a due process claim against the City. *See generally* Am. Cplt. (Dckt. No. 22).

Tirado and the City moved to dismiss the due process claim as time-barred. They raised a few other arguments, too.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Analysis

### I. The Statute of Limitations

The amended complaint added Inspector Tirado as a party, and added a new claim against the City. The first issue is whether the amended complaint relates back to the filing of the original complaint.

"In Illinois, the statute of limitations period for § 1983 claims is two years." *See Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011). The claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated." *See Reilly v. Will Cnty. Sheriff's Off.*, 142 F.4th 924, 930 (7th Cir. 2025) (quoting *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004). Due process claims accrue when the injury is "complete," meaning when the deprivation of life, liberty, or property occurs. *See Lawshe v. Simpson*, 16 F.3d 1475, 1480 (7th Cir. 1994).

The original complaint was timely. The incident took place on January 13, 2023, and Plaintiffs filed the complaint on September 12, 2024. The original complaint fell within the statute of limitations, with four months to spare.

The amended complaint is another story. The amended complaint hit the docket on March 26, 2025, more than two years after the incident on January 13, 2023. So the amended complaint is untimely unless it relates back to the filing of the original complaint.

Rule 15(c) governs the relation back of amended complaints. Part of the Rule governs the addition of new claims, and part of the Rule governs the addition of new parties.

For new claims, an amendment relates back if the new claim "arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." *See* Fed. R. Civ. P. 15(c)(1)(B).

For new parties, the same principle applies. An amendment that adds a new party relates back "if Rule 15(c)(1)(B) is satisfied," meaning that the new claim must have arisen "out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." *See* Fed. R. Civ. P. 15(c)(1)(C); *see also* Fed. R. Civ. P. 15(c)(1)(B).

But two other requirements apply when an amended complaint adds a new party. A plaintiff may add a defendant after the statute of limitations has lapsed if the new party "(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *See* Fed. R. Civ. P. 15(c)(1)(C).

The central inquiry under Rule 15(c) is whether the original complaint "gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one." *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006). "Even 'significant' changes to a complaint or to a class definition can relate back so long as the defendant had fair notice of the substance of the new allegations from the outset." *See Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 806 (7th Cir. 2005).

Here, Plaintiffs brought an indemnification claim against the City in the original complaint, and added a due process claim in the amended complaint. The claims in each pleading arose out of the same incident at the same property on the same day. So relation back applies to the new due process claim against the City.

To be sure, the legal theory changed, but that makes no difference. "Even where an amendment 'invoke[s] a legal theory not suggested by the original complaint and relie[s] on facts not originally asserted,' relation back is in order '[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts.'" *See Coleman v. United States*, 79 F.4th 822, 829 (7th Cir. 2023) (quoting *Mayle v. Felix*, 545 U.S. 644, 664 (2005)); *see also Elliott v. Village of Wayne*, 2026 WL 705746, at *3 (N.D. Ill. 2026) ("A new legal theory may therefore relate back if it is tethered to the same core of operative facts.").

True, the claim against the City in the original complaint was an indemnification claim (only). Plaintiffs originally alleged that the City was on the hook for the misconduct of the officers, not that the City itself did anything wrong in its own right.

Even so, bringing an indemnification claim is enough to get a plaintiff's foot in the door if the complaint and the amended complaint share common facts as required by Rule 15(c)(1)(B). Multiple courts in this district recognize that an untimely *Monell* claim can relate back to a timely indemnification claim. *See, e.g.*, *Treadwell v. Salgado*, 2021 WL 3129290, at *5 (N.D. Ill. 2021) (citing cases).

The new claim against the City relates back to the filing of the original complaint because they're about the same core set of facts. But the addition of Inspector Tirado as a party faces a higher hurdle.

Adding a new claim against an existing party has one hurdle, but adding a new claim against a new party has two additional hurdles. Adding a claim against a new party requires a common core of facts under Rule 15(c)(1)(B), *and* a lack of prejudice, *and* mistaken identity.

Plaintiffs overcome the first hurdle (meaning Rule 15(c)(1)(B)) when it comes to adding Inspector Tirado as a defendant. The complaint and the amended complaint address the same incident on the same day at the same place. So Rule 15(c)(1)(B) does not stand in the way of adding Inspector Tirano late in the game, after the buzzer went off.

But higher hurdles stand in the way. Rule 15(c)(1)(C) protects defendants from unfair surprise after the clock has run out. An amended complaint does not relate back unless the new party "(i) received such notice of the action that it will not be prejudiced in defending on the merits," and "(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *See* Fed. R. Civ. P. 15(c)(1)(C).

Those two elements go hand in hand. Basically, they ask whether the newly named defendant had reason to know that they were the intended target of the lawsuit all along, and whether the new defendant would suffer prejudice by the late-breaking addition. *See Shay v. City of Chicago*, 1988 WL 116505, at *1 (N.D. Ill. 1988) ("[I]f the amendment adds a new party, that party must receive such notice so that it will not be prejudiced in its defense and the party to be added must have at least constructive knowledge that the action would be brought against it.").

Peeling the onion of Rule 15(c)(1)(C) reveals lots of layers, above and beyond the need to satisfy Rule 15(c)(1)(B). The first element of Rule 15(c)(1)(C) involves notice and a lack of

prejudice. *See* Fed. R. Civ. P. 15(c)(1)(C)(i). The second element of Rule 15(c)(1)(C) "has two elements, both of which must be satisfied: (1) a mistake of identity, and (2) knowledge or constructive knowledge that the action would have been brought against the party but for the mistake." *See* 3 MOORE'S FEDERAL PRACTICE § 15.19[3][d] (3d ed. 2026); *see also* Fed. R. Civ. P. 15(c)(1)(C)(ii).

Under Rule 15(c)(1)(C), the focus is on the knowledge of the new defendant, not the plaintiff. "Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010) (emphasis in original); *see also* 3 MOORE'S FEDERAL PRACTICE § 15.19[3][d] (3d ed. 2026) ("In applying the rule, the focus is on the party to be brought in by the amendment."). Rule 15(c)(1)(C) applies if "the *party to be brought in by amendment*" received enough notice to avoid prejudice, and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *See* Fed. R. Civ. P. 15(c)(1)(C)(i), (ii) (emphasis added).

"The classic example of mistake is misnomer; that is, when a plaintiff misnames or misidentifies a party in its pleadings but correctly serves that party. In these cases, relation back is appropriate because the defendant is already before the court." *See* 3 MOORE'S FEDERAL PRACTICE § 15.19[3][d] (3d ed. 2026). That said, Rule 15(c)(1)(C) isn't limited to misnomers. *Id.*

Coincidentally, this case offers a perfect example of when Rule 15(c)(1)(C) can come into play. In the original complaint, Plaintiffs sued Officer "Merdea," but the amended complaint corrected the name to Officer "Meder." *See* Cplt. (Dckt. No. 1); Am. Cplt. (Dckt. No. 22). Officer Meder can't get out of the case simply because Plaintiffs botched his name from the get-go.

"Rule 15(c) was designed to protect a plaintiff who names a party mistakenly and then discovers the proper party's identity after the statute of limitations has run." *See Hill*, 924 F.2d at 1374. "A potential defendant who has not been named in a lawsuit by the time the statute of limitations has run is entitled to repose – unless it is or should be apparent to that person that he is the beneficiary of a mere slip of the pen, as it were." *See Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 560 (7th Cir. 2011).

Rule 15(c)(1)(C) might give plaintiffs an inch, but it doesn't give them a mile. The Rule applies to situations of *mistaken identity*. *See Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993). It "does not provide a mechanism by which a party may undo the effects of a prior strategic decision." *See Est. of Keys, By & Through Doxie v. City of Harvey*, 1994 WL 687479, at *4 (N.D. Ill. 1994).

"Changing one's mind about who to sue – or making a tactical decision to expand the boundaries of the lawsuit to add new defendants – does not qualify as mistaken identity." *See McMurtry v. Wexford Health Sources, Inc.*, 2021 WL 1165102, at *29 (N.D. Ill. 2021). Relation back doesn't apply simply because it suddenly dawns on a plaintiff to sue somebody else.

Maybe a plaintiff botched the complaint and left some meat on the table by failing to sue someone when the time was right. Maybe the failure to sue someone before the expiration of the statute of limitations was a "mistake," from a tactical or strategic perspective. But there is a big difference between a mistake, and a mistaken identity. And Rule 15(c)(1)(C) applies only to mistaken identities.

A lack of knowledge about someone's identity, without more, is not enough to constitute a "mistake" under Rule 15(c)(1)(C). "[N]aming a defendant as John Doe in the complaint is not based on an error, misconception, misunderstanding, or erroneous belief. Rather, it is a deliberate choice." *See Herrera v. Cleveland*, 8 F.4th 493, 498 (7th Cir. 2021) (citation omitted). Rule 15(c)(1)(C) does not apply to known unknowns.

In the case at hand, the record is underdeveloped on the first step of the analysis under Rule 15(c)(1)(C)(i). The parties devote little attention to whether Inspector Tirado had sufficient notice of the lawsuit to avoid prejudice. *See* Fed. R. Civ. P. 15(c)(1)(C)(i) (requiring a showing that the new defendant "received such notice of the action that it will not be prejudiced in defending on the merits").

This Court can hop over step one, because Plaintiffs trip on step two. The amended complaint can relate back only if Inspector Tirado knew or should have known that Plaintiffs would have sued him, "but for a mistake concerning the proper party's identity." *See* Fed. R. Civ. P. 15(c)(1)(C)(ii). The Rule requires a mistaken identity, and knowledge or constructive knowledge of that mistaken identity by the new defendant.

This case doesn't involve a mistaken identity at all. In fact, Plaintiffs concede the point. Plaintiffs admit that "this is *not* a case of mistaken identity." *See* Pls.' Resp. to Defs.' Mtn. to Dismiss, at 5 (Dckt. No. 49) (emphasis added). Without a mistaken identity, relation back doesn't apply.

In sum, this Court concludes that the due process claim against the City in the amended complaint relates back to the filing of the original complaint. But the claim against Tirado does not relate back, so it is untimely. Defendant Tirado is dismissed.

## II. *Monell*

Next, the City argues that the amended complaint fails to adequately plead municipal liability under *Monell v. Dept. of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). The Court agrees.

"For a *Monell* claim to survive a motion to dismiss, a plaintiff must plead facts that plausibly suggest that: (1) she was deprived of a constitutional right; (2) the deprivation can be traced 'to some municipal action (i.e., 'a policy or custom'), such that the challenged conduct is properly attributable to the municipality itself'; (3) 'the policy or custom demonstrates municipal fault, i.e., deliberate indifference; and (4) 'the municipal action was the moving force behind the federal-rights violation.'" *See Thomas v. Neenah Joint School Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) (citations omitted). "The critical question under *Monell* is whether a policy or custom of a

municipal entity caused a constitutional deprivation." *Gonzalez v. McHenry County*, 40 F.4th 824, 829 (7th Cir. 2022).

"Since a § 1983 cause of action must be against a 'person,' in order '[t]o recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'" *See Dorsey v. Ghosh*, 2015 WL 3524911, at *3 (N.D. Ill. 2015) (citing *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006)); *see also Peoples v. Cook Cnty*., 128 F.4th 901, 905 (7th Cir. 2025) ("Plaintiffs can sue a municipality under 42 U.S.C. § 1983 when *the municipality's* actions violate the United States Constitution . . . .") (emphasis added).

Respondeat superior does not apply to claims under section 1983. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("*Respondeat superior* or vicarious liability will not attach under § 1983."); *Monell*, 436 U.S. at 694 ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."). Section 1983 does not make a municipality pick up the check for constitutional violations committed by its employees.

"Misbehaving employees are responsible for their own conduct[;] 'units of local government are responsible only for their policies rather than misconduct by their workers.'" *See Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) (quoting *Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2007)); *see also Monell*, 436 U.S. at 691 ("A municipality cannot be held liable solely because it employs a tortfeasor.").

A single incident rarely gives rise to an inference of an unlawful policy or a widespread custom or practice under *Monell*. *See Wilson v. Cook County*, 742 F.3d 775, 780 (7th Cir. 2014); *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010). "That's because it's difficult to infer from a single event that a municipality is not just negligent, but deliberately indifferent to its employees' unconstitutional conduct." *Cambric v. City of Corpus Christi*, 170 F.4th 321, 327 (5th Cir. 2026) (Oldham, J., concurring).

"'[N]ormally, the mere allegation of a single act of unconstitutional conduct by a municipal employee will not support the inference that such conduct was pursuant to official policies. On the other hand, where the plaintiff alleges a pattern or a series of incidents of unconstitutional conduct . . . courts have found an allegation of policy sufficient to withstand a dismissal motion.'" *See Sanchez v. City of Chicago*, 2024 WL 4346381, at *18 (N.D. Ill. 2024) (quoting *Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir. 1981)).

The amended complaint at hand falls short of those standards. Plaintiffs allege that the City "is responsible for the policies, practices, and actions of its employees." *See* Am. Cplt., at ¶ 5 (Dckt. No. 22). But that's vicarious liability, and section 1983 does not allow for liability based on respondeat superior.

Plaintiffs do not allege that the City *itself* did anything wrong. The amended complaint does not allege that the City had a policy, practice, or custom of depriving residents of due process. Instead, Plaintiffs allege that the officers did something wrong, and therefore the City did something wrong. That's not a claim.

If anything, the amended complaint undermines any notion that the City had a policy or a widespread practice or custom. Plaintiffs allege that the officers specifically targeted their home because of suspected conduct by the minor (J.B.). They allege that the officers wanted to "extricate Plaintiffs from Country Club Hills." *See* Am. Cplt., at (Dckt. No. 22). The allegations sound like a one-off tied to this particular group of people, not a wider effort that sweeps more broadly.

The due process claim against the City is dismissed because the amended complaint fails to state a claim under *Monell*.

**Conclusion**

For those reasons, Defendants' motion to dismiss is granted. Defendant Tirado is dismissed with prejudice. The due process claim against the City is dismissed as well.

Date: September 24, 2026

Steven C. Seeger
United States District Judge